**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JASMINE ROBINSON, individually, and GLORIA JOHNSON, individually, | )<br>)<br>) |
| Plaintiffs, | ) No. 20-cv-4204<br>)<br>) Magistrate Keri L. Holleb Hotaling |
| v. | )<br>) |
| ROCKLEDGE FURNITURE, LLC, | )<br>) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Gloria Johnson, as guardian for then-minor Jasmine Robinson, instituted this action by bringing a negligence claim against Defendant for a 2015 accident involving Robinson at one of Defendant's furniture stores. [Complaint, Dkt. 1-1.] Since she has reached the age of majority, Jasmine Robinson ("Plaintiff" or "Plaintiff Robinson") now maintains this negligence action in her own name, and Gloria Johnson ("Plaintiff Johnson") asserts her own derivative claim for medical expenses under the Family Expense Act. [Second Amended Complaint ("SAC"), Dkt. 128.] Defendant denies it was negligent and further asserts the affirmative defense, *inter alia*, that Plaintiffs own carelessness/negligence was the cause of the incident. [Answer and Affirmative Defenses to SAC, Dkt. 129.] Before the Court is Defendant's fully briefed Motion for Summary Judgment. [Dkt. 57.]

According to Plaintiff, the only individual present during the alleged accident, the following occurred: then-ten-year-old Plaintiff was exiting Defendant's women's bathroom when a framed photo that hung directly above the inside of the doorframe fell and hit her head after she swung the door open, which struck the wall. This was Plaintiff's sworn version of events from the time the incident occurred in 2015 until her 2024 response in opposition to Defendant's motion for summary judgment. [*See* Dkt. 115.] When confronted with the physical impossibility of her

1

version of events, Plaintiff's story, for the first time, changed to, "well, something happened" in the bathroom that day. In an effort to salvage her negligence claim, Plaintiff appears to be attempting to walk the Court up to a *res ipsa loquitor* theory, a doctrine that asks the finder of fact to infer liability because the incident essentially "speaks for itself." As the Court will detail below, Plaintiff can offer no set of facts that plausibly support her claim of negligence. Thus, the Court must grant Defendant's Motion for Summary Judgment.

## I. Standard of Review

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56 (c). In determining whether there is a genuine issue of fact, the Court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Equal Emp. Opportunity Comm'n v. Costco Wholesale Corp.*, 903 F.3d 618, 621 (7th Cir. 2018). In doing so, "[t]he court need [not] consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252.

## II. Material Facts[1]

This lawsuit stems from a May 2, 2015, incident at Defendant's Ashley Furniture

---

[1] The Court has only cited material facts, not those facts which are not outcome determinative. *Anderson*, 477 U.S. at 248 (a "material fact" is one that "might affect the outcome of the suit").

Homestore ("Ashley Furniture"), in Burbank, Illinois. [Plaintiff's Statement of Material Facts ("PSOF"),[2] Dkt. 120, ¶ 1; Defendant's Statement of Material Facts ("DSOF"), Dkt. 104, ¶ 1.] On the day in question, then-ten-year-old Plaintiff Robinson visited the store with her great-grandmother Gloria Johnson. *Id*. At some point Ms. Johnson and Plaintiff went into the store's women's bathroom, with Ms. Johnson exiting the bathroom first and Plaintiff remaining in the bathroom. [PSOF ¶ 2; DSOF ¶ 2.] Plaintiff testified that when she pulled the door to exit the bathroom (the door opened into the bathroom rather than into the hallway outside [Dkt. 104-7]), the bathroom door hit the wall, causing a picture hanging directly above the doorframe (in the space between the doorframe and the ceiling) to fall on the top middle of her head. [DSOF ¶¶ 3-4; Plaintiff's Response to DSOF, Dkt. 115, ¶ 3; PSOF ¶ 4; *see also* Robinson Dep., Dkt. 104-1, 42:13-45:21, 47:20-24.][3] There were no witnesses to this incident. [DSOF ¶ 5; *see also* Dkt. 113-1, Bates No. ROCKLEDGE 1278.]

After the incident, Plaintiff exited the bathroom crying and carrying a large, framed picture. [DSOF ¶ 7.] Plaintiff said the picture fell on her head as she was exiting the bathroom. [*Id*.] The on-duty store manager, Sonia Nieves, testified that she was in her office when this incident occurred, and heard Plaintiff screaming near the bathroom, which was about twenty feet away. [PSOF ¶ 10; Nieves Dep., Dkt. 104-4, 14:18-15:8.] Ms. Nieves took the framed picture from Plaintiff. [PSOF ¶ 9; Plaintiff's Response to DSOF, ¶¶ 7-8).]

Although Plaintiff had no observable cuts, scrapes, bumps, or blood, Ms. Nieves asked if

---

[2] The Summary Judgment Motion in this case was filed before the Second Amended Complaint, the only substantive change to which was that Jasmine Robinson became a plaintiff in her own right and, thus, most of the summary judgment materials correctly refer to a singular plaintiff from when Gloria Johnson maintained this action as the guardian of Plaintiff Robinson. This also explains any seeming incongruity in docket numbers.

[3] Plaintiff, for the first time in response to Defendant's summary judgment motion, jettisons her own sworn testimony that the picture was "hanging on the top of the door" "above where the door stopped" "in that space on the wall between the top of the door and the ceiling" [Robinson Dep., Dkt. 104-1, 44:5-6; 44:14-17; 44:22-45:1], in favor of Defendant's store manager's testimony that the picture was hung on the bathroom wall directly to the left of the door as one exits the bathroom [PSOF ¶ 6 (citing Nieves Dep., Dkt. 104-4, "at p. 24")]. However, the store manager also testified she had no idea exactly where the picture was hung. [Nieves Dep., Dkt. 104-4, 23:23-25; 43:23-44:14.]

Plaintiff was hurt, and Plaintiff said her head hurt. [DSOF ¶ 10.] Ms. Johnson and Plaintiff declined medical attention or transportation to the hospital. [*Id.* at ¶ 11.] Ms. Johnson filled out an accident report with Ms. Nieves. [*Id.* at ¶ 12.] The accident report indicated the incident happened around 2:00 p.m. on May 2, 2015. [Dkt. 104-3.] After she filled out the report, Ms. Johnson went back into the bathroom with Ms. Nieves to see where the picture had fallen from. [DSOF ¶ 13.] Ms. Johnson later testified she saw a hook in the wall above the doorframe. [*Id.*] Ms. Johnson also testified that based on her inspection of the bathroom after the incident, the picture was hanging inside the bathroom directly above the doorframe as Plaintiff had said. [*Id.* at ¶ 14.] Ms. Johnson and Plaintiff then continued shopping and eventually purchased bedroom furniture for Plaintiff before they left the store; Ms. Nieves does not remember if she helped them with this purchase or another sales associate did. [*See* Nieves Dep., Dkt. 104-4, 79:5-80:24.]

Several hours later at approximately 5:30 p.m., Plaintiff presented at the emergency department with a chief complaint of "family states pt got hit in the head with a picture; pt now states dizziness." [Dkt. 113-1, Bates No. ROCKLEDGE 1278.] Plaintiff was ultimately diagnosed with a contusion (*i.e.*, a bruise) of the head and acute leg pain. [*Id.* at Bates No. ROCKLEDGE 1280.][4]

It is undisputed that the framed picture at issue here is approximately 30 inches tall by 30 inches wide. [DSOF ¶ 19 (admitted).] The space between the top of the bathroom doorframe and the ceiling is 10 inches. [*Id.* at ¶ 20.] After the incident, the front of the picture was not damaged in any way. [*Id.* at ¶ 9 (admitted).] There is no photographic evidence of the back of the picture or its hanging mechanism. [*See* Plaintiff's Response to DSOF ¶ 9.] However, at the same

---

[4] Plaintiff also attributes other symptoms to the picture falling on her, including forgetfulness; persistent but transient headaches; and auditory and visual hallucinations, including seeing dead relatives. [Robinson Dep., Dkt. 104-1, 83:14-84:2, 101:15-107:17.] She was reportedly referred to a neurologist who scheduled an EEG and was referred for a neuropsychological evaluation and a psychological evaluation. [*Id.*] The Court was not provided any medical documentation to support these claims, which are in any event not outcome determinative.

time, there is no affirmative evidence that anyone noticed any damage to the back of the picture or its hanging mechanism. In fact, evidence indicates there was no damage to the hanging mechanism of the picture. To wit, Ms. Nieves testified that she had an opportunity to look at the back side of the picture and can say "that I know for sure was not damaged." [Nieves Dep., Dkt. 104-4, 128:4-13.] Additionally, after Ms. Johnson and Plaintiff left the store, Ms. Nieves briefly rehung the photo on the hook because she was curious how the picture could have fallen. [*Id.* at 29:20-30:16.] Similarly, the hook was not damaged, and the wall was not damaged. [*Id.* at 128:14-129:3; *see also* Defendant's expert witness disclosure of John D. Olivas, Ph.D., P.E., Dkt. 104-9, ¶ 8.] After the incident, at the direction of Ms. Nieves, the framed picture at issue was not hung in the store again, but instead was removed to the Ashley Furniture warehouse. [PSOF ¶¶ 16-17.]

**III.     Analysis**

    **A.     Plaintiff's Negligence Claim Fails Because Plaintiff's Version of Events is "Utterly Implausible."**

Complaints in federal court rely on notice pleading. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). In the instant matter, Plaintiffs' Second Amended Complaint (as well as both prior operative complaints) gave Defendant notice that Plaintiff was proceeding with this suit under a negligence theory. [Dkt. 128.]

Proceeding under this negligence theory, Plaintiff (and her great-grandmother Ms. Johnson) unequivocally testified that the picture that allegedly struck Plaintiff was hanging directly above the door inside the women's bathroom and fell directly on top of Plaintiff's head. However, the picture is 30 inches tall and there is only 10 inches of vertical space above the door, so the events cannot have transpired as Plaintiff and Ms. Johnson claim they did.

On summary judgment, the Court need not accept "utterly implausible" testimony. *See Melton v. Tippecanoe Cty.*, 838 F.3d 814, 819 (7th Cir. 2016) (plaintiff could not survive summary judgment based on "demonstrably implausible deposition testimony") (internal quotations omitted). "Utter implausibility" is not limited to a version of events that is physically impossible or defies the laws of nature (*e.g.*, testimony that a person sprouted wings and flew), though both of those characterizations apply here. *In re Chavin*, 150 F.3d 726, 728-29 (7th Cir. 1998). "Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Seshadri v. Kasraian*, 130 F.3d 798, 802 (7th Cir. 1997); *see also Bullard v. Sercon Corp.*, 846 F.2d 463, 466 (7th Cir. 1988) (testimony may be rejected "where the testimony is seriously inconsistent internally, or contrary to established laws of nature or otherwise fantastic, or irreconcilably in conflict with indubitable documentary or physical evidence, stipulations of fact, admissions, or evidence of equivalent certainty"). Indeed, "testimony can and should be rejected if, in the circumstances, no reasonable person would believe it." *Seshadri*, 130 F.3d at 802 (citations omitted).

For example, the U.S. District Court for the Western District of Missouri rejected a plaintiff's claims that his handcuffs were "melted off his hands" by defendant's electrical taser and granted summary judgment for defendant. *Balentine v. Shockley*, No. 04-4012-CV-C-NKL, 2005 WL 3336519, at *2 (W.D. Mo. Dec. 7, 2005). In doing so, the district court relied on the Seventh Circuit opinion in *Seshadri* and explained that a court should reject testimony that no reasonable person would believe. *Id*. Because plaintiff's testimony appeared "physically impossible" and was based purely on plaintiff's say-so, the court rejected it. *Id*.; *see also Garza v. Chavez*, No. 10-7658-VBF (MAN), 2014 WL 3571721, at *12 (C.D. Cal. Mar. 4, 2014) (plaintiff's testimony that defendant threw a wheelchair 10-15 feet inside his jail cell was physically impossible given that the dimensions of plaintiff's jail cell were much smaller and would not permit such an act).

Similarly (although not as factually far-fetched), in *Melton v. Tippecanoe County*, the Seventh Circuit affirmed the trial court's rejection of the Fair Labor Standards Act-plaintiff's testimony that he "would work through all or part of his lunch break." 838 F.3d at 818-19. Plaintiff supported his testimony with a spreadsheet of hours worked based on his recollection. *Id*. When the defendant-employer introduced evidence on summary judgment showing that plaintiff's recollection was unreliable and that defendant had in fact paid plaintiff for all time he had certified, the plaintiff failed to rehabilitate his spreadsheet or otherwise show that his recollection was reliable. *Id*. at 819. Instead, plaintiff argued that defendant's argument was "premature" and "an issue of credibility to be decided at trial." *Id*. The Seventh Circuit rejected plaintiff's argument and explained that where the defendant had refuted plaintiff's "demonstrably implausible deposition testimony," summary judgment was appropriate. *Id*. Here, the Court finds just that – Defendant has refuted Plaintiff's "demonstrably implausible deposition testimony."

Under applicable case law, the Court finds Plaintiff's version of events utterly implausible as a matter of law, which no reasonable jury could accept as true. Accepting Plaintiff's testimony would require the Court to credit a version of events where (1) a framed picture was hung in a space physically too small for it, (2) the picture was hooked into the wall above a doorframe, where the bottom 20 inches of the picture (2/3 of it) was hanging down over the door into the doorway, and (3) impeding the opening and closing of the door itself. This is not merely improbable as a practical or aesthetic matter; it makes Plaintiff's version of events – how the picture was hung and how it fell and hit her – impossible under the circumstances. If the picture had been hanging in that fashion, it would have prevented proper operation of the door and the door would have struck the picture each time it was opened or closed, including when Plaintiff and her great-grandmother entered the bathroom as well as when Ms. Johnson exited the bathroom before Plaintiff.[5] This is

---

5   Not to mention everyone else who had used the bathroom that day and presumably the days leading up to it.

an utterly implausible scenario under any circumstance, but even more so here given that Plaintiff testified she did not notice any pictures when she entered and exited the bathroom. [PSOF ¶ 5.] Again, if the picture had been hung as both Plaintiff and Ms. Johnson unequivocally testified, it would have been struck by Plaintiff and Ms. Johnson's opening of the door and noticed long before Plaintiff exited the bathroom alone. The incident simply could not have occurred as Plaintiff testified (and as her negligence complaint alleged).

### i. The Opinions of Defendant's Expert Confirm the Utter Implausibility of Plaintiff's Version of Events

The Court believes the utter implausibility of Plaintiff's version of events is apparent on its face, but Defendant has gone a step further to demonstrate the same. Defendant hired an expert witness in this matter, John D. Olivas, Ph.D., P.E., a former NASA Astronaut and Professional Engineer, who examined the restroom and the scenario as testified to by Plaintiff and Ms. Johnson. Plaintiff did not disclose any expert in this case and failed to depose Dr. Olivas.

The admissibility of expert testimony is governed by Fed. R. Evid. 702 and *Daubert*.[6] *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[6] Although Plaintiff has not formally challenged the admissibility of Dr. Olivas's qualifications or opinions, Plaintiff has, in response to certain of Defendant's material facts, objected to the foundation for Dr. Olivas's opinions and the methodology he employed. [Plaintiff's Response to DSOF ¶ 23-33.] Setting aside the propriety and sufficiency of Plaintiff's answer to these material facts, it is clear the Court must conduct a *Daubert* analysis of Dr. Olivas's work before it rules on Defendant's Motion for Summary Judgment. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) ("[t]he soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact, or, where appropriate, on summary judgment") (citing, *inter alia*, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993)); *see also Cage v. City of Chicago*, 979 F. Supp. 2d 787, 810 (N.D. Ill. 2013); *Koehler v. Infosys Techs. Ltd. Inc.*, 628 F. Supp. 3d 835, 873 (E.D. Wis. 2022).

Fed. R. Evid. 702. As a practical matter, district courts apply the *Daubert* framework described above using a three-part analysis. *Cage*, 979 F. Supp. 2d at 799 (citing *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010)). First, the expert must be qualified by knowledge, skill, experience, training, or education; and second, the testimony must be reliable and fit the facts of the case. If these two requirements are met, the Court will assess whether the expert's proposed testimony will assist the trier of fact in understanding the evidence or to determine a factual issue – essentially, the testimony must be "helpful," which dovetails with the relevance requirements of Fed. R. Evid. 401-403. *Cage*, 979 F. Supp. 2d at 799 (citing *Myers*, 629 F.3d at 644; *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007)). Additionally, "[a]lthough under Rule 704(a) an expert may testify to the ultimate issue in a case, the expert's testimony need not relate to the ultimate issue in order to be relevant under Rule 702." *Smith*, 215 F.3d at 721.

Here, the Court finds Dr. Olivas to be a qualified Professional Engineer who has over 30 years of experience in the field, including 12 years investigating nearly every major accident and incident during his tenure with NASA. [*See* Dr. Olivas's expert witness disclosure, Dkt. 104-9, Exhibit B, p. 2.] Dr. Olivas also has "led and participated in numerous root cause and cause and effect investigations" and is well versed in the instant subject matter. [*Id.*] In addition to reviewing most pleadings, the key depositions, and many documents produced in this case, Dr. Olivas "performed a detailed and thorough inspection of the subject site which included 3-D laser scanning, measurements, [and] testing" and he "examined, tested, and analyzed exemplar photo frames and frame hooks, similar to those involved in the present allegation." [*Id.* at p. 3.] Dr. Olivas has applied well-established engineering techniques to the various potential accident situations at issue in this case. Thus, the Court finds Dr. Olivas's testimony reliable and tailored to the facts of this case. Finally, the Court finds it helpful to have a Professional Engineer provide opinions in this matter to assist the Court in understanding the evidence before it.

Dr. Olivas unequivocally concluded, within a reasonable degree of engineering certainty,

9

that the incident recounted by Plaintiff "is inconsistent with the physical evidence and laws of physics, and thus, could not have occurred as she testified at [her] deposition." [*Id.* at p. 4.] Specifically, Dr. Olivas opined the following:

- The picture frame at issue could not have been placed over the door.

- The door's closing or slamming would not have allowed sufficient vibration to cause the picture to fall from the wall.

- No external forces – apart from Plaintiff interacting with the picture frame (*e.g.*, Plaintiff intentionally manipulating it on the wall) – could have caused it to fall from the wall.

[*Id.* at pp. 3-5, ¶ 1, 9-10, 13, 18(A-C); *see also*, DSOF ¶ 27-29.]

Additionally, Dr. Olivas even examined an alternative scenario (*see* fn. 3, *supra*) where the picture frame at issue would have been hung on the left wall as one exited the restroom, and similarly concluded that in this version of events, the picture "could not have fallen without direct interaction" by Plaintiff. [*Id.* at p. 4, ¶ 15.]

The Court is further persuaded by Dr. Olivas's opinions that Plaintiff's version of the story (confirmed by her great-grandmother's testimony) is implausible. *See United States v. Hattermann,* 853 F.2d 555, 559 (7th Cir. 1988) (standing for the proposition that the credibility of a witness's testimony may be enhanced – or, conversely, undermined – by expert witness testimony). Just like in *Melton* (where plaintiff's self-recollected timesheet testimony was refuted), Plaintiff cannot survive summary judgment here where her testimony is (1) flatly refuted by the evidence of record and (2) "so implausible on its face that no reasonable person would believe it." *Melton*, 838 F.3d at 819 (internal signals and citations omitted). Plaintiff cannot establish her *prima facie* negligence case with this evidence. The Court must grant summary judgment for Defendant on this basis.

    **B.**    **Plaintiff Cannot Succeed Under a *Res Ipsa Loquitor* Theory of Liability**

As the Court previewed earlier, for the first time in response to Defendant's summary

judgment motion, Plaintiff abandoned her own sworn testimony – that the picture was hanging above the bathroom door in the space between the top of the doorframe and the ceiling. *See* fn. 3, *supra*. Instead, the crux of Plaintiff's summary judgment response is that because Plaintiff exited the bathroom crying and holding a framed picture, stating her head hurt, and went later that day to the emergency department, this is evidence suggesting *something* happened in the bathroom of the Ashley Furniture store. And in considering the facts in the light most favorable to Plaintiff, the Court presumes something did happen in the bathroom that day. But whether Defendant is alone responsible for the something that happened is a completely different inquiry.

Although Plaintiff has not alleged a *res ipsa loquitor* theory of recovery, a plaintiff need not plead the elements of *res ipsa* in her complaint to use this theory in her case. *Assenato v. Target Corp.*, No. 11-cv-6846, 2012 WL 205858, at *2 (N.D. Ill. Jan. 24, 2012) "*[R]es ipsa loquitur* is a type of circumstantial evidence that permits a trier of fact to infer negligence when the plaintiff does not know the cause of her injury." *Assenato*, 2012 WL 205858, at *2 (citation omitted). Despite Plaintiff not employing the phrase *res ipsa loquitor* in the SAC or any pleading to date, she walks the Court up to the threshold of this theory of evidence and indeed seems to be invoking the doctrine of *res ipsa loquitur*.

A plaintiff using a *res ipsa loquitor* theory asks a finder of fact to infer liability when (as per the translation from Latin) "the thing speaks for itself." *Ruark v. Union Pac. R.R. Co.*, 916 F.3d 619, 623 (7th Cir. 2019). *Res ipsa loquitur* is based on the principle "that certain accidents are so unusual that the party shown to be in exclusive control of the injuring object ought to be held responsible unless that party can offer a reasonable explanation." *Newell v. Westinghouse Elec. Corp.*, 36 F.3d 576, 579 (7th Cir. 1994). For negligence claims based on *res ipsa loquitur*, a plaintiff must prove an injury (1) "that does not ordinarily occur absent negligence; (2) the injury must have been caused by some agency or instrumentality in the exclusive control of the defendant; and (3) the injury must not have been due to any contribution or voluntary activity on the part of

the plaintiff." *Ruark*, 916 F.3d at 626. While "exclusive control" in prong two is a not a rigid term, the Seventh Circuit is unequivocal in its reiteration of the last term: "[i]n order for a plaintiff to show that the defendant was responsible for the accident, he must preclude other possible causes of the injury – including his own contribution." *Ruark*, at 627 (reference omitted); *see also Smith v. United States*, 860 F.3d 995, 1000 (7th Cir. 2017) ("the control criterion of the *res ipsa loquitur* doctrine is a flexible rather than a rigid standard").

Here, there is a question whether Plaintiff contributed to the accident, much like the situation analyzed by the Seventh Circuit in *Ruark*. Faced with that scenario, the Seventh Circuit (citing the Illinois Supreme Court) noted that the "[Illinois] Supreme Court and this court have been clear that one cannot employ the doctrine of *res ipsa loquitur* where there is a possibility of negligence on the part of the injured plaintiff. The injury must have occurred *without* fault of the injured person." *Ruark*, at 628 (emphasis added) (citing *Jesionowski v. Bos. & M. R. R.*, 329 U.S. 452, 456-57 (1947)) (signals and other citations omitted).

Here, Plaintiff faces the insurmountable hurdle of her own potential negligence in light of the unrebutted expert opinion of Dr. Olivas that no external forces aside from Plaintiff herself could have caused the picture to fall from the wall. [Dkt. 104-9, Exhibit B, p. 4-5, ¶ 10, 18(C); DSOF ¶ 29.] Plaintiff cannot create an issue of fact by vaguely implying '*something* must have happened' considering the unrebutted opinion of Defendant's expert that the incident recounted by Plaintiff "is inconsistent with the physical evidence and laws of physics and, thus, could not have occurred" as Plaintiff testified and, moreover, that it could not have occurred without her own negligence. [*Id.* at ¶ 15.] *See Toyo Tire Corp. v. Atturo Tire Corp.*, No. 14-cv-206, 2021 WL 463254, at *6 (N.D. Ill. Feb. 9, 2021) (plaintiff could not "create an issue of fact with argument in its brief where the unrebutted opinions" of Defendant's experts was wholly contrary to plaintiff's argument); *see also Newell*, 36 F.3d at 579 ("[a] probability of negligence may be supported by expert testimony or common sense inference). Moreover, "if two reasonable inferences are

12

deducible from the same facts, one of which comports with defendant's responsibility and the other is directly contra thereto, neither should be indulged to permit recovery by use of the doctrine of *res ipsa loquitur*." *Smith*, 860 F.3d at 999 (citing *Britton v. Univ. of Chicago Hosps.*, 889 N.E.2d 706, 709 (Ill. App. Ct. 2008)).

Finally, *res ipsa loquitur* is unavailing here because Plaintiff's accident took place in a high-traffic, public area – the women's restroom of a furniture store –where many individuals aside from Defendant or Plaintiff might have played some small role in the picture falling. When "it is just as likely that the actions of other shoppers caused the [accident] as it is that the store was at fault, the use of a *res ipsa loquitur* theory is inappropriate. *Assenato*, at *3. Simply put, "[i]n a high-traffic, public area…where there is causal uncertainty, the doctrine of *res ipsa loquitur* is inapplicable." *Reddick v. Dillard's Inc.*, No. CIV.08-844-CJP, 2010 WL 1752555, at *3 (S.D. Ill. Apr. 30, 2010).

So, even construing the facts favorably to Plaintiff to infer that *something* happened in the women's restroom of the Ashley Furniture on May 2, 2015, it appears this something is attributable to an accident on Plaintiff's part rather than obviously and clearly being attributable solely to the fault of Defendant. *Res ipsa loquitur* cannot apply where injury "can be as readily attributed to pure accident as to negligence" *Smith*, 860 F.3d at 999 (citing *Nickel v. Hollywood Casino-Aurora, Inc.*, 730 N.E.2d 1212, 1215 (Ill. App. Ct. 2000)). Plaintiff cannot succeed under a *res ipsa* theory of recovery, and the Court must enter summary judgment for Defendant.

### C. Gloria Johnson's Derivative Family Expense Act Claim Fails as a Matter of Law

As Plaintiff's guardian at the time this lawsuit was filed, Plaintiff Johnson also asserts a derivative claim under the Illinois Family Expense Act, 750 ILCS 65/15, alleging a right to recover

the medical expenses stemming from this incident.[7] [SAC Count II.] The Family Expense Act makes parents/guardians responsible for, among other things, the medical expenses of their minor children/wards and enables them to sue third parties who cause the medical expenses to be incurred. 750 ILCS 65/15. However, negative resolution of underlying tort claims requires negative resolution of the derivative causes of action as well. *See*, *e.g.*, *Dunne v. Reda*, 2013 WL 617077, at *4 (N.D. Ill. Feb. 19, 2013) ("There is no dispute that if [defendant] is entitled to summary judgment on [plaintiff's primary] claim, he is also entitled to summary judgment on [plaintiff's] derivative claim for medical expenses); *Blackford v. Wal-Mart Stores, Inc.*, 2008 WL 905912, at *1 (S.D. Ill. April 2, 2008) (Illinois Family Expense Act claims are derivative of underlying tort claims and "[n]egative resolution of the liability issue resolves the medical expense issue"). Therefore, because Plaintiff's negligence claim cannot survive summary judgment, Ms. Johnson's derivative claim under the Family Expense Act also fails, and Defendant is entitled to summary judgment on this claim as well.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [Dkt. 57] is hereby granted. Judgement shall enter in favor of Defendant Rockledge Furniture, LLC and against Plaintiff Jasmine Robinson and Plaintiff Gloria Johnson. This civil case is terminated.

**ENTERED: May 31, 2024**

                                           Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge

---

[7] Ms. Johnson asserts that Plaintiff's mother Latoya Robinson (not a party to this lawsuit) assigned Ms. Johnson her rights to recover medical expenses stemming from Plaintiff's May 2, 2015 injuries. [SAC ¶ 21; *see also*, Dkt. 60, p. 4.] Defendant denies this allegation and further asserts Failure of Assignment of Rights as an affirmative defense. [Answer and Affirmative Defenses to SAC, Dkt. 129, ¶ 21 and Affirmative Defense No. 4.] The Court need not reach the issue of the sufficiency of this purported assignment of rights because this claim does not survive summary judgment.